IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID NEMAN, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11-cv-03082 |
| | § | |
| GREATER HOUSTON ALL-PRO | § | |
| AUTO INTERIORS, LLC, *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This Fair Labor Standards Act ("FLSA") case is before the Court on Defendants Great Houston All-Pro Interiors, LLC and Kyle A. Anderson's Motion to Dismiss or in the Alternative, Motion for More Definite Statement ("Motion to Dismiss") [Doc. # 23]. Plaintiff timely filed a Response [Doc. #27] as well as a Motion for Leave to File a Second Amended Complaint ("Motion to Amend") [Doc. # 26]. Because the Court finds that Plaintiff has sufficiently alleged a cause of action under the FLSA, the Court **DENIES** the Motion to Dismiss. The Court also **GRANTS** Plaintiff's Motion to Amend.

## I.  BACKGROUND

Plaintiff David Neman alleges that starting from late-2008 through mid-2010, he worked for Defendants Great Houston All-Pro Interiors, LLC ("All-Pro"), Kyle A. Anderson ("Anderson"), Dent Wizard International Corporation ("Dent Wizard"), and Kelly G. Conger ("Conger") (collectively, "Defendants") as an

1

"interior repairman" of cars. First. Am. Compl., ¶ 14. Plaintiff alleges that he was stationed at the 7111 Southwest Freeway, Houston, Texas location of CarMax, with whom Defendants had contracted to provide interior and dent repair for CarMax vehicles. *Id.*, ¶¶ 15. According to Plaintiff, Anderson is the sole member and/or owner of All-Pro, *id.*, ¶ 6, and Conger is or was at times pertinent to this case the President of Dent Wizard, *id.*, ¶ 7.

On August 23, 2011, Plaintiff filed a Complaint alleging that Defendants violated the FLSA by denying him overtime pay. Compl., ¶ 2. Plaintiff alleges that under his initial schedule, he worked twelve-hour days, six days per week, with no lunch breaks. *Id.*, ¶ 17. Plaintiff also alleges that under a subsequent schedule, he worked eight-hour days, six days per week. *Id.*, ¶ 17. According to Plaintiff, although he was treated as an independent contractor by Defendants, he was actually an employee for purposes of the FLSA. *Id.*, ¶ 20. As support, Plaintiff alleges, for example, that Dent Wizard controlled and set Plaintiff's work schedule, required that he be stationed at CarMax during the workday, and required that he use the CarMax offices and body shop for his work, *id.*, ¶ 21; that Dent Wizard employees made sure he was at CarMax during his scheduled work hours, *id.*, ¶ 27; and that Dent Wizard set the prices for repairs and issued him a PDA on which he entered work orders and repair details from CarMax, *id.*, ¶ 16. Plaintiff also alleges that All-Pro required him to wear a uniform and hat with the

All-Pro logo, *id.*, ¶ 24; provided all the tools that he used to fulfill CarMax work orders, *id.*, ¶ 25; trained him on how to repair upholstery using All-Pro techniques, *id.*; required Plaintiff to sign a non-compete agreement, *id.*, ¶ 22, provided marketing materials, *id.*, ¶ 25; and required him to report his whereabouts to Anderson in case of an emergency, *id.*, ¶ 27.

On February 7, 2012, Defendants All-Pro and Anderson ("All-Pro Defendants") filed a Motion to Dismiss [Doc. # 23].[1] Plaintiff subsequently filed a Motion to Amend [Doc. # 26], to which the Defendants have not responded.[2] The Motion to Amend primarily changes certain present tense words and phrases in the First Amended Complaint [Doc. # 14] to past tense in the Second Amended Complaint.[3] Plaintiffs also filed a Response [Doc. # 27] to the All-Pro Defendants' Motion to Dismiss, to which the All-Pro Defendants have not replied. The times

---

[1]  Defendants Dent Wizard and Conger previously filed a Motion to Dismiss [Doc. # 6], which the Court denied as moot, *see* Order [Doc. # 16], after the Plaintiff filed a First Amended Complaint [Doc. # 14]. On January 19, 2012, Defendants Dent Wizard and Conger filed their Answer [Doc. # 17] and Cross-Claim Against Defendants All-Pro and Anderson [Doc. # 18].

[2]  Under this District's Local Rules, failure to respond is taken as a representation of no opposition to the relief requested. S.D. TEX. LOC. R. 7.4.

[3]  Other changes in the proposed Second Amended Complaint include inserting information about the procedural history of the case since the filing of the First Amended Complaint, *see* Second Am. Compl., ¶¶ 4, 5, 6, 7, and restating the time period during which Plaintiff worked for Defendants, *compare id.*, ¶ 14 ("Plaintiff was employed by one or more of the Defendants beginning in the later part of 2008 and ending in the first half of 2010"), *with* First Am. Compl., ¶ 14 ("Plaintiff has been employed by one or more of the Defendants since September, 2008).

for the Defendants and the All-Pro Defendants, respectively, to respond or to reply have now expired.

## II.     LEGAL STANDARDS

A complaint is sufficient for most claims if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Bass v. Stryker Corp.*, 2012 WL 266985, at *2 (5th Cir. Jan. 31, 2012) (citing *Jebaco Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009)). Recent decisions by the Supreme Court have elaborated on the pleading standards for civil litigation. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Supreme Court emphasized two "working principles" underlying its decisions in *Iqbal* and *Twombly*: first, while a court must accept as true all factual allegations in a complaint, the court need not accept a complaint's legal conclusions as true; and, second, a complaint must state a "plausible claim for relief" in order to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949-50. A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc) (quoting *Iqbal*, 129 S. Ct. at 1949). Dismissal is

appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level. *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010).

A party is entitled to a more definite statement only when the pleading to which the party must respond "is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e); *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).[4]  In deciding whether to grant a Rule 12(e) motion, the trial judge is given considerable discretion. *See Ditcharo v. United Parcel Serv., Inc.*, 376 F. App'x 432, 440 n.9 (5th Cir. 2010) (citing *Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989)) ("[Courts of appeal] review orders made pursuant to Rule 12(e) for abuse of discretion.").

## III.  DISCUSSION

Plaintiff alleges that Defendants failed to pay Plaintiff overtime compensation in violation of sections 6 and 7 of the FLSA, codified at

---

[4] Rule 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

FED. R. CIV. P. 12(e).

29 U.S.C. §§ 206, 207.  The All-Pro Defendants argue that Plaintiff has failed to sufficiently allege (1) that Plaintiff was an employee of All-Pro or Anderson, *id.*, ¶¶ 5, 7, 13; (2) that All-Pro and Anderson each is an "enterprise engaged in commerce or in the production of goods for commerce," *id.*, ¶¶ 7, 13; (3) that All-Pro or Anderson acted knowingly, willfully, or in reckless disregard of the FLSA, *id.*; or (4) that a collective action exists in this case, *id.*, ¶ 17.

### A.   "Employee" Status under the FLSA

The FLSA applies to employees but not to independent contractors. *Hopkins v. Cornerstone Amer.*, 545 F. 3d 338, 342 (5th Cir. 2008).  The definition of an employee under the FLSA is particularly broad.  *Id.* at 343 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles")).[5] To determine if a worker qualifies as an employee of a particular employer, a court "focuses on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself."  *Id.* (citing *Herman v. Express Sixty-Minutes Delivery Servs., Inc.*, 161 F.3d 299, 303

---

[5]  Under the FLSA, an individual can also be an employee to two or more employers at the same time.  Joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the FLSA.  *See, e.g.*, *Martin v. Bedell*, 955 F.2d 1029, 1034 n.10 (5th Cir. 1992); *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973) (citations omitted).

(5th Cir. 1998)). To aid in this inquiry, the Fifth Circuit considers five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* No single factor is determinative. *Id.* (citing *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043-44 (5th Cir. 1987)). Rather, each factor is a tool used to gauge the economic dependence of the alleged employee on the alleged employer, and each must be applied with this ultimate concept in mind. *Id.*

As support for their argument, the All-Pro Defendants rely principally on an "All-Pro Interiors Independent Contract Agreement" ("All-Pro Contract') that "appoint[s] [Plaintiff] David Neman as the Independent Contractor and representative of All-Pro Interiors" in several Texas counties, as well as a W-9 tax form that Neman signed as an "Individual/Sole Proprietor."[6] *See* Def. Ex. A, All-Pro Contract [Doc. # 23-2], at 1; Def. Ex. B, Neman W-9 [Doc. # 23-3]. Defendants also cite to Plaintiff's allegation that he "receives a 1099 from All-

---

[6] Documents attached to a Defendant's motion to dismiss that are referred to in the complaint and are central to the Plaintiffs' claims are considered part of the pleadings. *See, e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citations omitted). Plaintiff's Complaint refers to a "non-compete agreement," *see* First Am. Compl., ¶ 22, which presumably refers to the non-compete clause in the All-Pro Contract. *See* Def. Ex. A, All-Pro Contract [Doc. # 23-1], at 4.

7

Pro." *See* Motion to Dismiss, ¶ 10 (citing First. Am. Compl., ¶ 20). However, a contractual designation that a worker was an independent contractor is not controlling when determining whether that worker is an employee or independent contractor under the FLSA. *See, e.g.*, *Usery v Pilgrim Equip. Co.*, 527 F.2d 1308, 1315 (5th Cir. 1976) (citations omitted). That Neman received a 1099 form is also not dispositive. *See Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 665 (5th Cir. 1983) (holding that welders who worked over 40 hours per week for welding company were entitled to overtime compensation, even though they, *inter alia*, signed a contract with company describing themselves as independent contractors and filed federal income tax returns as self-employed individuals).

Plaintiff has pleaded sufficient facts to state a plausible claim under the Fifth Circuit's "economic reality" test that he was an employee of the All-Pro Defendants. The All-Pro Defendants argue that they did not control Plaintiff's work because the All-Pro Contract "does not control or address [Plaintiff's] hours or methods of work, or how Neman is to perform his day to day operations." Motion, ¶ 12. They also argue that "CarMax, if anyone, employed or controlled Neman." Motion, ¶ 11. The Court is unpersuaded. Although, Plaintiff alleges that he is "stationed at CarMax" and that he "reports to a CarMax manager when he arrives at work," *id.*, ¶¶ 15, 16, he also alleges that the Defendants contracted with CarMax to provide interior and dent repair on CarMax vehicles, *id.*, ¶15, that the

8

repairs were priced according to a Dent Wizard price chart, *id.*, ¶ 16, that work orders and invoices were managed on a Dent Wizard-issued PDA, *id.*, and that All-Pro ultimately paid Plaintiff for the invoiced work, *id.*

Plaintiff further alleges facts showing that All-Pro had significant control over his work. All-Pro allegedly required Plaintiff "to be stationed at Car Max during his work hours and to utilize the Car Max offices and body shop for his work," First Am. Compl., ¶ 21, "to wear a uniform and hat with the All-Pro logo and carry All-Pro business cards [supplied by All-Pro]," *id.*, ¶ 23, to apprentice under an All-Pro upholstery technician, *id.* ¶ 25, and provided all the tools that Plaintiff used to fulfill work orders,[7] *id.*, ¶ 24. Plaintiff also alleges that the Dent Wizard office was located on the CarMax lot and that Plaintiff "[was] not free to leave work for personal or other matters." *Id.*, ¶ 27.

The pleadings in the First Amended Complaint also show that Plaintiff's role as an "interior repairman" did not require significant initiative. For example, All-Pro and Dent Wizard allegedly supplied all of Plaintiff's marketing and advertising

---

[7] The All-Pro Contract states:

> [All-Pro] will lease the Independent Contractor sufficient materials at a cost of one percent (1%) of sales per month (to be deducted from commissions on a monthly basis) . . . . All of the materials and supplies will remain the exclusive property of [All-Pro]. The Independent Contractor will return all of the materials to [All-Pro] upon termination of this Agreement. Further, the Independent Contractor will reimburse [All-Pro] for any materials not returned or not returned in satisfactory working order.

Def. Ex. A, All-Pro Contract [Doc. # 23-2], ¶ 1.2.

9

materials and forbade Plaintiff from advertising or finding his own clients. *See id.*, ¶ 26. All-Pro allegedly also "restrain[ed Plaintiff] from doing upholstery work elsewhere" under the All-Pro non-compete agreement. *Id.*, ¶ 22. Plaintiff did not set his work schedule or price the work that he performed. *See id.*, ¶ 11.[8]

The All-Pro Defendants contend that Plaintiff, "unlike an employee, was at risk in the venture" because he received 40% commission for amounts collected from customers and was "back-charged" for any amounts not collected within 120 days. *Id.*, ¶ 12. How Plaintiff was paid is not dispositive of his employment status, as each factor under the economic reality test is only a tool to gauge the economic dependence of the alleged employee. *See Hopkins v. Cornerstone Amer.*, 545 F. 3d 338, 343 (5th Cir. 2008).

Plaintiff also alleges sufficient facts concerning Anderson. Plaintiff alleges that Anderson "is the sole member and/or owner of All-Pro," that Anderson "created, ratified, and implemented" All-Pro's payment scheme, and that Plaintiff "is required to report to . . . Defendant Anderson [Plaintiff's] whereabouts in case of an emergency." *Id.*, ¶ 27. At this juncture, these allegations are sufficient to give rise to a plausible claim that Anderson "acted directly or indirectly" as an employer under the FLSA. *See* 29 U.S.C. § 203 (defining "employer" to include

---

[8] The 1% monthly lease charge for All-Pro materials, as well as All-Pro's (and Dent Wizard's) provision of all marketing materials indicate that All-Pro primarily made the investments in the tools, equipment, processes, and materials that Plaintiff used in his work.

"any person acting directly or indirectly in the interest of an employer in relation to an employee").

Plaintiff accordingly has alleged sufficient facts to state a plausible claim that he was an employee of the All-Pro Defendants.

### B. Remaining Arguments

The All-Pro Defendants also argue that Plaintiff has failed to allege sufficient facts to establish that All-Pro or Anderson is an "enterprise engaged in commerce or in the production of goods for commerce." Motion, ¶¶ 7, 13. The Court is unpersuaded. An "enterprise engaged in commerce or in the production of goods for commerce" is an enterprise that

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person . . . and . . . whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(A)(i), (ii). Plaintiff alleges that All-Pro is a Texas limited liability company, *see* First. Am. Compl., ¶ 5, that provides interior repair services for cars and vehicles, *id.*, ¶¶ 15, 22, 25, and that "has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated)," *id.* ¶ 12. Plaintiff has also pleaded that Anderson is the sole member and/or owner of All-Pro and is a registered agent

11

of service for process for All-Pro. *Id.*, ¶¶ 5, 6. Defendant is not entitled to dismissal on this basis.

Last, the All-Pro Defendants argue that Plaintiff has not pleaded sufficient facts to show that All-Pro or Anderson acted knowingly, willfully, or in reckless disregard of the FLSA, *id.*, ¶¶ 7, 13; that Plaintiff has not pleaded adequate facts to warrant a collective action, *id.*, ¶ 17; and that the First Amended Complaint fails to provide fair notice of Neman's or the collective action claim, *id.*, ¶¶ 7, 17. The Court is unpersuaded. While the Complaint is sparse on these matters, the omissions are not grounds for dismissal of a willfulness claim or a claim for collective action treatment. Whether an employer acted willfully is relevant to determining whether a two-year or three-year statute of limitations applies under FLSA, *see* 29 U.S.C. § 255, and must be determined on a factual record. Furthermore, whether the case should proceed as a collective action is properly addressed when Plaintiff moves for conditional certification and issuance of notice to the class. *See Hoffman v. Cemex, Inc.*, 2009 WL 4825224, *4 (S.D. Tex. Dec. 8, 2009) (citation omitted). The Court also finds that Plaintiff's factual allegations are sufficient to give the All-Pro Defendants notice of the categories of the claims and potential plaintiffs at issue. Defendants can frame responses to the Complaint and to discovery. Here, the pleading is not "so vague or ambiguous that the party cannot reasonably prepare a response." *See* FED. R. CIV. P. 12(e). Accordingly,

12

Defendant is not entitled to dismissal or a more particular statement of the claims at this time.

## IV.   CONCLUSION

Because the Plaintiff has alleged sufficient facts supporting that he is an employee under the FLSA and other matters challenged by the All-Pro Defendants, the Court denies their requests for dismissal of Plaintiff's claims and for more definite statement.  It is therefore

**ORDERED** that the All-Pro Defendants' Motion to Dismiss or in the Alternative, Motion for More Definite Statement [Doc. # 23] is **DENIED**.[9]  It is further

**ORDERED** that Plaintiff's Motion for Leave to File a Second Amended Complaint [Doc. # 26] is **GRANTED**.

**SIGNED** at Houston, Texas, this 14th day of **March, 2012**.

_____
Nancy F. Atlas
United States District Judge

---

[9]   The Court also denies All-Pro Defendants' request for dismissal of the cross-claim filed by Defendant Dent Wizard.